Judge Mills
delivered the Opinion of the Court.
This is a bill filed by Joseph Roberts, in his life time, settingup an entry and junior patent for land, against elder patents.
He died, pending the suit, and it. was revived by order in the names of his heirs at law.
The court, below decreed to them an undivided part of the land claimed, and dismissed the bill as to the residue, and from that decree each party has appealed, and each lias assigned errors.
The defendants below insist, that the complainant lias made out no title to the claim, asserted in the bill, ami that there is a want of proper parties to the suit. We shall first enquire into the truth of this assignment; as.it may not only supersede an investigation of, but render it improper to say any thing on the merits.
The claim set up is an entry, survey ambpatent in the names of' Samuel Bell and Daniel Sullivan,.
As to Bell’s moiety, the hill sets up a bond, .which purports to.be. executed to John Gamble and his sis, ters, without naming of them, by Thomas.Bell. Joseph Bell and Sarah Bell, who. are stated, to be heirs and devisees of Samuel Bel! the patentee.. This bond purports to be assigned by John Gamble,, Rebecca Gamble, Robert I)avis and Nancy bis wife, John Bell and Esther bis wife, (.which females are charged to be the sisters of John Gamble,) to Samuel Bell the younger, and by him to James L, Henderson, and by Henderson.to William Roberts, and by said William to Joseph the complainant, arid the assignees and obligees, or their representatives are named-.as parties to this suit.
This bond is alleged, to be good for three-fourths <^f the moiety of the patentee, leaving one-fourth ¡more in John Bell, another heir a.ud.devisee of tlsp. *396 patentee, who is alleged to have made a will and tie-vised it to Samuel Bell the younger, who conveyed to the complainant; all which is relied on as sufficient to pass the title, part legal and parr equitable, to the complainant, of the moiety of Samuel Bell, and the court below so decided, and decreed a conveyance, against these supposed devisees'of the patentee, before decreeing in favor of the complainant against the. holders of the adverse grants.
¡Derivation of title to Sullivan’s moiety.
Answers,contesting comtle.maHtS
Samuel Bell’sestáfente5 Joto; Thomas, Joseph Bell Sarah' e‘
Statutes of wills prior to ’8VliTnol'V? give thopower to deviso aflands°qmie Since (hat date, the delT°ífmhe ° choose.
As to the moiety of the patentee Sullivan, the bill sets up a direct conveyance from Daniel Suili-. van, alleged to be son and sole heir of the said pa^enj.p(5j 0f which we shall for the present take no farther notice.
The right of inheritance, or by devise in any of these supposed representatives of the patentees, is strictly contested by the answers of the defendants, who hold adversely.
It seems evident from the proof, that Samuel Bell the patentee died childless, and that, he made a will, w^ere*n» devised all his estate, after his debts were paid, to be divided into four equal parts, and one of each of those parts to be allotted to bis brothers, John Bell, Thomas- Bell, Joseph Bell, and his sister, Sarah Bell,, respectively.
This, so far suits, at first sight, the allegations of the complainant, and must have be.en held by the C0U[.j; below, sufficient to support them. But the will Samuel Bell, the patentee, is dated on the 2-Sd of September, 1782, and the entry made in the joint pames of him, and Sullivan is dated on the Slstday of December, 17.84, upwards of two years after the date of the will. We are not favored with the (late 0f the warrant, in any part of the record, and we catínot presume- that it was issued more than two years before the date of the entry. The entry then must be taken as after-acquired lands, and such lands at the date of this will, could not pass by devise. — . Indeed, the will, making power did not extend prospectively to estates thereafter acquired, so that testators, however strong they might express their intention to pass future estates, Could not do it, until the first day of January, l"87, when they were allowed to do so, if they chose.
íands^of a¿ unmarried i1®?! ¿gSt brother* since then tó ^.a®n ^
Letter of a£* tome’ authorising a conveyance, under which complainant derives title, not appearing, held that h§ did not a.en-quire the title».
One- deriving title by assignment of a bond executed to a man and his sisterf must shew who the sisters are and that they all executecl the assignment.
There must be a privy examination to pass the title of a feme cov-. ert obligee in a conveyance ¡jOnd.
It then clearly follows, that this tract of land was not affected by the will of the patentee, but was left to descend to his heirs; whether to one heir, or to all his brothers and sisters, depends upon the time of his death, whether before the first day of January, 1787, or since. We have no certain proof of the exact time. The first certain account of his death is in April, 1788, when his will was produced for probate, find this will not warrant us in presuming that he was dead on the first day of January, 1787.
Assuming the fart to be, that he died afterwards, the proof is clear that he had at least five brothers and three sisters, so that the complainant, according to his own shewing, has derived an equity from, only half the number of his heirs at law.
Indeed his title does, not Appear complete to John Bell’s part of that half. For although the will of John Bell is filed, and there is a devise to. Samuel Bell, jr., which includes this tract of land, yet it is also jointly with him to. John Bell, jr., and Stephenson Bell. A conveyance from Stephenson Bell for himself, and as attorney in fact for John Bell the younger, to Samuel Bell, jr. is filed, but we cannot discover any letter of attorney to Stephenson Bell, which authorizes him to make- such a conveyance. Of course, one third of the title of' John Bell the elder, has not. passed to-the complainant.
A further difficulty in the titie of the complainant appears in the assignment of the bond executed to John Gamble and bis sisters. This imposed upon the complainant below, the proof of who were bis sisters, and that they were the same persons who had assigned the conveyance bond; on this point the proof made is defective; for it does not clearly appear how many sisters Gamble had, who they were, and that ail had made the assignment.
Here we will suggest a further difficulty in the complainants road. Some of those persons who have assigned the bond, and who are alleged to be the sisters of Gamble, appear to be femes covert. To pass their title, it is necessary that they should pass an examination by the proper authority, as directed by act of assembly. Whether it ho absolutely necessary that such privy examination should take *398 placo before, a decree can be rendered, vve need notenquire. For if. is clear, that on a bare assignment in conjunction with the husband, the chancellor ought not to decree away the title of thc/eme, or dc-that it had already passed on a bill taken as c°nfe3Si?d, and on her default. A further assent on her part, on the records of the chancellor, at least, js necessary before such decree can He. rendered,
^nr'a'Tecree may be rondered o« such went vritSout privy examSnationl— ~It.‘'.?1nnot ■eonfusso._\ fuither assent nrnit'i Pear m^tbe chancollar’s reuorti*
Held by the cironit court that the child marriage, the first wife 3iv-in?, is ii3egitids father’s heir.
In bills forre lief'against ' iho elder ver'of special ontóes^all who have any inierentmihe chúm whethcr parceners or tenants in anfte'as'complainants or tle made deifen ants.
*iavo seen that the title of the complainant ro the moiety of Beil, tliepatent.ee, is defective; a >vo> -cf defect is alleged in Hie answers against the moiery of Sullivan- it is Alleged that Bani»l Sullivan, who, as heir or the patentee, had convey ed to the eomplainpvnt, Joseph Roberts, was an illegitimate child — that though his father was in fact married to his tnolher, yet the mother vías, at the -same time, the legal wife of another man, and continued .so during her cohabitation with the father. The court be-l.ow, conreiving the proof satisfactory on this point,, dismissod the claim of the complainants as to the moiety |jius (]er¡ve!j; but considering the equity to Bell’s moiety clear, still prorceded to give, relief to the. cornplainants as to one undivided moiety of the interfere enrP with the defendants.
' * e will not now, express any opinion on Hus prool, .especially as the attitude of the parties, or the s^renS^1 this proof ntay, by further proceedings; he materially changed. But the relief granted as to the undivided moiety of the inte.rferenee is singu*ilr at)^ without, precedent. The principle is almost, if not altoge-ther universal, which requires all parties concerned in interest, to be, brought before the court ¡n a sujj; jn equity, anterior to a final decision on the, merits. This principie has been applied with unbending force by the courts of this country to that class of cases in which the chancellor has been called to give releif against elder grants in favor of special entries. The decree.must, be'final, and sett¡e the whole controversy, and there cannot be as many suits as there are owners of undivided portions.. Therefore, not only joint tenants, and parceners, bnt tenants in common have eiUier been compelled to join, or stand, on refusal to join, in the attitude of defendants. St then inevitably followed, upon decs *399 ding that the moiety of Sullivan did not belong to the complainant, that the court could not with propriety give a decree on the merits for an undivided part, or absolutely dismiss the bill.
If there he a want of parities in such case, the chancellor may in his discretion give time for them to bo made, or dismiss the hill without prejudice.
If defendant^ who had answered before complainants death, appear to an ot-der for reviving the suits in the names of his heirs and so proceed to a hearing it will do for i e-» vivor as to thorn.— —But asti» defendants who do not appear, sack an attempt to revive will not bo effectual.
Mandate as to parties.
IMbott for Roberts’ heirs; Crittenden for Elliott’s hei®.
But the chancellor was bound, either to dismiss the bill without prejudice, for the want of proper parties, or he might in his discretion, give a decree directing such dismission, if the proper parties were siot made in a limited time; neither of which ia done in this case. If Daniel Sullivan who had conveyed, was not the heir, it is presumable that the title rests in some, other heir, and the true owner ought to be brought before the court, or the bill be dismissed without prejudice.
We will notice one other defect in the preparation, which, if the cause should progress further in the court below, ought to be corrected. On the death of Roberts, (he complainant, a motion was made and the cause directed by order to he revived in t he name of his heirs. As some of tho defendants had appeared and answered, and seem afterwards to have taken notice of this order, without service thereof, this yrocceding as to them is deemed a sufficient revivor.
But there were many other defendants necessary bo the complainant’s case, who had never appeared or answered, and some of them had only constructive notice by order of publication. As to these, the cause could not he revived by a simple order, but a bill of revivor was necessary. For it is only as to those defendants who may have answered, that the act of assembly permits a revivor by mere order and .Service thereof. Other cases still remain subject to the ancient chancery remedy by bill of revivor.
The decree must be reversed. The heirs of Joseph Huberts, the complainant, must pay the costs of both appeals. The cause must be remanded, with directions to the court, below to dismiss the bill without prejudice to a future suit, for the same cause of complaint, unless the complainants shall bring ail the proper parties before, the court, in a reasonable time there given for that purpose,